**WALES TRUCKING COMPANY,**
**Appellant,**

v.

**Louis STALLCUP et al., Appellees.**

**No. 17165.**

Court of Civil Appeals of Texas,
Fort Worth.

March 5, 1971.

Rehearing Denied April 2, 1971.

Fillmore, Lambert, Farabee & Purtle, and Larry Lambert, Wichita Falls, for appellant.

Short & Helton, and R. M. Helton, Wichita Falls, for appellees.

## OPINION

LANGDON, Justice.

Louis Stallcup and wife initiated this suit against the Wales Trucking Company, a Texas corporation, for dust damages sustained by them as the result of an alleged nuisance created and maintained by Wales through its unreasonable use of the unimproved public county road which runs in front of their rural home. Based on a jury verdict, judgment was rendered for the Stallcups for damages in the amount of .$5,000.00. Wales has appealed.

Wales was engaged in hauling heavy concrete water pipe from the Gifford-Hill plant located in the Fort Worth-Dallas area to the site of the right-of-way of the water pipeline being constructed to bring water from Lake Arrowhead in Clay County to the City of Wichita Falls. The limit of Wales' responsibility was to haul the water pipe. For a period of about four (4) months between April 15 to September 1 of 1968, Wales made commercial use of the roadway in front of the Stallcup home seven days per week by transporting about 825 truck loads of pipe over such road and returning an equal number of empty trucks over the same route. (Approximately 1650 truck trips during the 4 month period.) The center of the roadway was 75 feet from the front wall of the Stallcup home. A majority of the loaded trucks weighed 58,000 pounds. A few grossed 72,000 pounds. The loaded trucks traveled 25 to 30 miles per hour and the empty ones about 45 to 50 miles per hour. Because of weather conditions or the production schedule of the water pipe the deliveries thereof varied between zero and 20 during any one day. Wales' commercial use of the roadway, as above indicated, was extensive and for the period of approximately four months converted the seldom used country road in front of the Stallcup home to a heavily traveled thoroughfare. "* * * they (Wales) were just beating the road up and it just got like ashes." Dust from the dirt and graveled surface drifted onto the Stallcups' premises and into their home causing discomfort and irritation.

On May 7, 1968, after a week or more of the dust Mr. Stallcup called the Grand Prairie office of Wales. He talked to its President. Stallcup complained to the President of Wales about the dust and its effect upon him and his family. In this connection he said, " 'They have got our road just powdered up, * * * We just can't stand it. We just can't live with it.' " Later Mr. Stallcup talked with the supervisor of Wales who was on duty at the site of the pipeline. A few days later the Wales' trucks commenced to use an alternate route. This lasted about a week or ten days. Because of complaints by a County Commissioner concerning use of the alternate route Wales again routed its trucks in front of the Stallcup home and continued its use of such road the remainder of the period. The roadway in question was used as access to the pipeline right-of-way during about 5 miles of its construction. Most trucks hauled two joints of pipe which were each 16 feet long. An average of six to eight loads per day were hauled. When Wales resumed its hauling in front of the Stallcup home after its brief use of the alternate access road it did so with notice and knowledge of the dust problems affecting the Stallcups which it had in the past and would again cause.

The Stallcups pleaded a cause of action based upon both nuisance and negligence, however, at the time of trial they abandoned any claim based upon negligence and no issues were submitted on this theory. The only relief sought was by way of damages for the nuisance.

In its charge to the jury the court defined "nuisance" in substantially the same words as the definition approved in Columbian Carbon Co. v. Tholen, 199 S.W.2d 825 (Galveston Tex.Civ.App., 1947, writ ref.). The word, "unreasonable," was substituted in lieu of the word "unusual". Other slight changes were made in the Tholen definition to adapt it to the use made of the public road. Substantially the same definition was approved in the more recent case of Collins Construction Company of Texas v. Tindall, 386 S.W.2d 218 (Eastland Tex.Civ.App., 1965, ref. n. r. e.).

In the case at bar the jury in answering Special Issues 1 through 8, respectively found: (1) Wales' use of the roadway caused substantial amounts of dust to be deposited on Stallcup's property; (2) such depositing of dust was the result of a nuisance, i. e., the unreasonable and excessive use of the roadway; (3) as a proximate cause of such nuisance the Stallcups suffered damage for (a) the temporary loss of enjoyment of their dwelling house and (b) for temporary physical discomfort; (4) $2,500.00 in damages was awarded for (a) temporary loss of enjoyment and $2,500.00 for (b) temporary physical discomfort; (5) Wales had notice of damage resulting to the Stallcups from such nuisance; and (6) continued the nuisance after having such notice. (The matters involved in Special Issues 5 and 6 relating to notice were undisputed.)

By its first five points Wales contends that the court erred in overruling its motions for instructed verdict and for judgment non obstante veredicto because its use of the road was neither negligent nor unlawful, was not a nuisance as a matter of law and there was no finding of negligence in its use of the public road. By its points 6 and 7 Wales asserts the court erred in submitting Special Issues Nos. 2 and 3 and in failing to disregard the answers thereto because there was no evidence or insufficient evidence making its use of the public road a nuisance.

The seven points of error presented, brief and argued by Wales on this appeal are singly and collectively based upon the sole proposition that there can be no right of recovery against it in the absence of pleadings, proof and findings of either negligent or unlawful conduct on its part. Wales in its reply brief says: "The primary issues on appeal as highlighted by the two prior opposing briefs are whether either negligence or unlawful use must be plead and proven in establishing as a nuisance the use of a public roadway.

"Appellant contends that one or both of these elements must be present. Appellee contends that it is sufficient to establish that use of the roadway was 'unreasonable'."

Wales makes it clear that its no evidence and insufficient evidence points are based solely on the proposition that there is no evidence or that the evidence is insufficient to establish that it was guilty of either negligent or unlawful conduct and that therefore as a matter of law its conduct did not constitute a nuisance.

The Stallcups contend that an abutting property owner who sustains damage caused by a nuisance which is created by a member of the public in making an unreasonable use of a public road is liable to such abutting property owner for the damage caused him by such nuisance.

We have concluded from our analysis of Wales' briefs that it in effect admits that at common law and therefore in Texas that an abutting property owner does have a cause of action such as is described in the preceding paragraph. The only difference in the contentions of the parties to this appeal is that Wales contends that a showing of conduct of an unlawful or negligent nature is an essential element of such a cause of action.

Stallcups take the position that the elements of negligence and unlawful conduct are not essential elements of their cause of action.

"As a general rule, proof of negligence is not essential to imposition of liability for the creation or maintenance of a nuisance. This is so though the nuisance complained of may be the consequence of negligence. A nuisance does not rest on the degree of care used, but on the degree of danger or annoyance existing even with the best of care. Consequently, if a nuisance exists, the fact that due care was exercised against its becoming a danger or annoyance is no excuse. However, where the act or condition in question can become a nuisance only by reason of the negligent manner in which it is performed or permitted, no right of recovery is shown independently of the existence of negligence." 41 Tex.Jur.2d 591, § 17.

The general rule above enunciated is supported by Columbian Carbon Co. v. Tholen, supra; King v. Columbian Carbon Co., 152 F.2d 636 (Cir.Ct. of App., 5th Cir., 1945); Collins Construction Company of Texas v. Tindall, supra; and a host of other cases cited in 41 Tex.Jur.2d 591, § 17 and pocket parts, supra. See also 66 C.J.S. Nuisances § 11, p. 751.

Further, as a general rule, proof of unlawful conduct is not essential to the imposition of liability for the creation or maintenance of a nuisance. The fact that an act is lawful does not prevent it from being a nuisance. Generally nuisances arise from violation of the common law rather than violation of a statute. 39 Am. Jur., "Nuisances", p. 301, § 20, "Lawful Acts.—", and § 21, "Unlawful Acts.—." To the same effect see King v. Columbian Carbon Co., supra, 152 F.2d at page 639 (5); 39 Am.Jur. 325, § 44; 41 Tex.Jur.2d 588; 66 C.J.S. Nuisances § 9b, and 66 C.J.S. Nuisances § 9 p. 749 and p. 763, § 17 of same text.

In the King case, supra, the sole question presented was whether or not a landowner is without recourse for damages caused to his land in a case where the parties were agreed that defendant's operation was lawful, fulfilled a necessary public purpose, was not a nuisance per se, was not negligent and that damages would have resulted from defendant's operation without regard to the manner in which it was conducted.

While there is no agreement as to the facts in the present case, it is accurate to state that the elements above referred to in the King case are present here and are undisputed. We submit that regardless of whether or not Wales' vehicles were properly licensed, did not exceed load limits, had proper permits from the Railroad Commission and were operated within permissive speed limits would not have altered the damages sustained by the Stallcups.

The law "does not allow anyone, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity." 39 Am.Jur. 327, § 45, p. 328. This passage was quoted with approval in King, supra, 152 F.2d at page 639(6).

In applying the above stated general rules of law to the facts of this case we find and hold that pleadings and proof of either negligent or unlawful conduct or both are not necessary or essential elements of the cause of action here involved.

The Supreme Court of Iowa in Shannon v. Missouri Valley Limestone Company, 255 Iowa 528, 122 N.W.2d 278 (1963) said: "We are compelled to agree with the trial court that a common law nuisance is created by the dust raised by the trucks hauling crushed rock from the quarry." See also Loosian v. Goudreault, 335 Mass. 253, 139 N.E.2d 403 (1957); Gronn v. Rogers Construction, Inc., 221 Or. 226, 350 P.2d 1086 (1960); Carter v. Northwestern Tel. Exch. Co., 60 Minn. 539, 63 N.W. 111, 113 (1895); Yale University v. City of New Haven, 104 Conn. 610, 134 A. 268 (1926).

"Every person has the right to have the air diffused over his premises, whether located in the city or the country, in its natural state and free from artificial impurities. However, by air in its natural state

and free from artificial impurities is meant pure air consistent with the locality and character of the community. The pollution of the air so far as is reasonably necessary to the enjoyment of life and indispensable to the progress of society is not actionable. But this right of pollution must not be exercised in an unreasonable manner so as to inflict injury on another unnecessarily. Any business, though in itself lawful, that necessarily impregnates large volumes of the atmosphere with disagreeable, unwholesome, or offensive matter may become a nuisance to those occupying adjacent property, in case it is so near and the atmosphere is so contaminated as to substantially impair the comfort or enjoyment of adjacent occupants. Thus smoke, dust, noxious fumes or gases, or stenches or smells may constitute a nuisance under some circumstances." 41 Tex.Jur.2d 608, § 33, and pocket parts.

In our opinion the facts in the Collins case, supra, involving dust from a rock crushing operation near the Tindall home which continued for about three months are very similar to the facts here involved. The testimony concerning the problems arising from the dust was similar to the testimony received in the instant case. In Collins the court in applying the general rules above set forth held that the dust caused by the operation of the rock crusher created a nuisance regardless of the degree of care exercised by the operator and thus it was not necessary to plead and prove negligence on his part. The same rule is applicable here. The dust caused by the operators of the trucks created a nuisance regardless of the care exercised by such operators and regardless of the lawful manner in which the trucks were operated. Thus it was unnecessary to plead and prove negligence or unlawful conduct on the part of such operators.

The Stallcups in the case at bar and the Tindalls in the Collins case were subjected to the same nuisance, i. e., dust. In varying degrees they sustained the same type of damages.

In Collins the dust nuisance was caused by a rock crusher which apparently was in a fixed, immobile position on private property. Here the dust nuisance was caused by mobile equipment, i. e., moving trucks making unreasonable use of a public road.

Does the difference between mobile and immobile equipment operating on public or private property, respectively, require that different rules be applied in connection with responsibility for the creation of a nuisance? We think not. We so hold. The same general rules apply in both cases.

We have examined the entire record in this case. We have concluded the evidence was sufficient to support the answers of the jury to each of the special issues submitted to it.

All points of error are overruled. The judgment of the trial court is affirmed.