GRAT WEST, *et al.*

*v.*

NATIONAL MINES CORP., *et al.*

(No. 14916)

Decided December 18, 1981.

*David Norken and Tobias J. Hirshman* for appellants.

*Love, Wise, Robinson & Woodroe, E. Glenn Robinson and David L. Wyant,* for appellees.

McGRAW, JUSTICE:

This is an appeal from a judgment order of the Circuit Court of Wyoming County which denied the appellants' motion for a preliminary injunction and granted the appellees' motion to dismiss. The appellants, Grat and Mila West, husband and wife, live along state secondary route 8/1 on Buffalo Creek in Wyoming County. Appellee, National Mines Corporation, owns the coal lease on property located up the hollow from the appellants' property. National has contracted with the other named appellees, H & S Coal Company, B & F Coal Company, C & L Coal Company, Inc., and Economy Fuel Company, Inc., for the production of coal from its leasehold.

Coal produced from National's leasehold is removed by contract haulers who transport the coal by truck down route 8/1 past the appellants' house to a preparation facility owned by National located approximately three miles west of Pineville, West Virginia. The coal is hauled in large trucks carrying 30 to 50 tons per load. The trucks run six days per week and occasionally all night long.

Route 8/1, the only access road between the mine and National's preparation facility, is a dirt and gravel based road. Consequently, much dust is created by the truck traffic in dry weather conditions. The dust problem is exacerbated by the truck operators' practice of travelling in packs of four or five trucks at a speed of approximately 30 miles per hour. Although there is a limited amount of local automobile traffic on the road, the dust problem is caused primarily by the coal truck traffic. The appellants' house sits close to the road and the dust created by the trucks settles on the house and the surrounding property.

Although the appellants have lived in their present house since 1972, Mr. West has lived at the same address for over 45 years. Mining operations have been ongoing above the appellants' property for decades, but more coal is being hauled out now than ever before.[1] Thus more and larger coal trucks travel route 8/1 now than in the past, and as a result the dust problem associated with the truck traffic has become more severe.

The appellants filed a complaint against National and the other coal companies on November 21, 1978 alleging the existence of a nuisance caused by the activities of the appellees and seeking preliminary and permanent injunctive relief, as well as damages. After filing an answer and two amended answers the appellees moved to dismiss the complaint. The appellants then filed a petition for a preliminary injunction requesting that the appellees be temporarily enjoined from hauling coal over route 8/1, or in the alternative that they be required to water the road in order to abate the dust, and for such other relief as may be deemed reasonable and just.

The trial court did not act upon the appellees' motion to dismiss, but a hearing was held on the appellants' petition for a preliminary injunction on September 21, 1979, at which Mr. and Mrs. West testified. Mr. West described the

---

[1] During 1977, 74,644 tons of coal were removed by truck past the appellants' house to National's preparation facility. During 1978, 116,868 tons were removed, and from January 1979 to June 1979, 90,158 tons of coal were removed.

nature of the nuisance created by the appellees' operations in the following manner:

> [T]he trucks create this dust coming up from the road, and we have to live there because we have nowhere else to go. It is our home, and we have to breathe and you can't breathe in the dust, as thick as it is. It is like a cloud hanging down there all day long way up into the night. If you are outside trying to do something in the yard or the garden, you've got to wear a dust mask. (R. p. 57.)

The dust is ubiquitous. It permeates the house even with the doors and windows closed. The evidence shows that the dust is oily and greasy, black looking and hard to clean. It interferes with breathing. It spoils the food raised by the appellants in their garden. It fouls the water, and prevents the appellants from sleeping soundly. The oppressive conditions caused by the dust were summarized by Mr. West:

> You can stay out in the dust, I believe, and it would actually kill you in the end. I have to get out of it. You all ought to really understand what I am trying to say here, that the dust can be that bad down there. You take a dirt road down there, as much big traffic as is on it, that is the kind of atmosphere we have to live in every day except when it is raining, and, believe me it is not good. It is hard to breathe. I tell you, I've often thought about it like this: A man would be better off over there in jail in solitary confinement than to have to put up with this kind of conditions for the rest of his life. It is just that bad. (R. 60-61.)

The appellees offered no evidence at the hearing, but rather presented a memorandum in support of their motion to dismiss. The appellants requested additional time to file a memorandum, but before they could do so the trial court entered an order denying their petition for a preliminary injunction and dismissed the action, as to the coal companies, on the merits. The memorandum opinion of the circuit court indicates that it dismissed the complaint and denied the injunction against National because none of its trucks or employees were involved in the hauling of

coal along route 8/1. The court further concluded that none of the other coal companies were guilty of actionable negligence because the dust problem was created by their use of a *public* road.

The appellants contend that the circuit court erred in dismissing their complaint. They allege that, notwithstanding the fact that the coal is hauled on a public road, the dust created by the coal trucks is a nuisance because it is excessive and constitutes a substantial and continuing problem that has caused a material disturbance by denying them the use and enjoyment of their house. They further contend that the appellees are responsible for creation of the nuisance even though the haulers may be independent contractors. Finally, the appellants allege that the circuit court erred in denying them a temporary injunction.

Initially we note that it is unclear from the record whether the trial court treated the appellees' motion as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, or as a motion for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure. While Rule 12(b)(6) and Rule 56 are closely related, and perhaps overlap in some respects, only matters contained in the pleadings may be considered on a motion to dismiss under Rule 12(b)(6). If matters outside the pleadings are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of as provided in Rule 56. *Chapman v. Kane Transfer Company*, 160 W. Va. 530, 236 S.E.2d 207 (1977); *Barker v. Traders Bank*, 152 W. Va. 774, 166 S.E.2d 331 (1969). Since the trial court's ruling on the appellees' motion was made after taking evidence at the hearing on the propriety of a preliminary injunction, we will treat the trial court's disposition of the appellees' motion as a ruling under the provisions of Rule 56.

There are two primary issues presented by this appeal. First, can the unreasonable, negligent or unlawful use of a

public road constitute a legally cognizable nuisance, and second, can the primary beneficiary of a contractual relationship escape liability for nuisance through the use of independent contractors whose unreasonable, negligent or unlawful activities give rise to a nuisance.

## I.

American courts are agreed on the general rule that any dust which substantially interferes with the comfortable enjoyment of adjacent premises constitutes a nuisance, *see Annot.*, 24 A.L.R.2d 194 § 1 (1952), and the appellees do not here dispute the fact that the coal truck traffic along route 8/1 has created a serious dust problem. Rather they argue that a private party cannot be held liable for a dust nuisance which arises from the use of a public roadway. We disagree.

The issue of whether the use of a public road can constitute an actionable nuisance is one of first impression in this jurisdiction; other jurisdictions have, however, addressed the issue, with varying results. For example, in *Shannon v. Missouri Valley Limestone Company*, 255 Iowa 528, 122 N.W.2d 278 (1963), property owners brought suit to enjoin a dust nuisance arising from the hauling of limestone by trucks on an unpaved public road adjoining their property. The trial court did not enjoin use of the road or stop operation of the limestone quarry, but did require the limestone company, notwithstanding that the trucks were operated by independent contractors, to treat the surface of the road to prevent dust damage to the plaintiffs and their property. The Supreme Court of Iowa affirmed, noting that:

> The dust is irritating to the skin, nose and throat, kills lawns, gets in their homes and food, is injurious to all vegetation and livestock, requires plaintiffs to keep their homes closed in hot weather, and in short makes ordinary use of a home and lawn impossible during spring, summer and fall during dry weather. We are compelled to agree with the trial court that a common law nuisance is created

by the dust raised by the trucks hauling crushed rock from the quarry.

122 N.W.2d at 279. *Accord, Pottawattamie County v. Iowa Department of Environmental Quality,* 272 N.W.2d 448 (Iowa 1978).

In *Wales Trucking Company v. Stallcup,* 465 S.W.2d 444 (Tex. App. 1971) property owners brought suit for dust damages against a trucking company which was engaged in hauling heavy concrete piping for a nearby water project along an unimproved public road which ran in front of the plaintiffs' house. The jury found that the activities of the trucking company had created a nuisance and awarded the plaintiffs $5000 damages. On appeal the trucking company argued that either negligence or unlawful use must be plead and proven in establishing as a nuisance the use of a public roadway. The Court of Civil Appeals rejected this argument, holding that at common law a property owner who sustains damage caused by a nuisance which is created by a member of the public in making an *unreasonable* use of a public road has a cause of action for the damage caused by the nuisance, and that proof of negligent or unlawful conduct is not a necessary or essential element of such cause of action.

The Texas court's opinion was in part founded upon an earlier decision that held the dust created by a rock crushing operation on private property constituted an actionable nuisance regardless of the degree of care exercised by the operator. *Collins Construction Company v. Tindall,* 386 S.W.2d 218 (Tex. Civ. App. 1965). The court in *Wales* reasoned:

> Does the difference between mobile and immobile equipment operating on public or private property, respectively, require that different rules be applied in connection with responsibility for the creation of a nuisance? We think not. We so hold. The same general rules apply in both cases. 465 S.W.2d at 448.

*Wales* was subsequently reversed by the Supreme Court of Texas which held that the facts of the case did not

warrant a holding of liability without fault or nuisance without fault where the activity is of a temporary nature and involves the lawful use of a public road to deliver pipe for a public water supply project. 474 S.W.2d 184 (Texas 1971). The court stated, however, that:

> It is not necessary for us to hold, and we do not hold, that the *use for profit* of a public highway cannot be, or become, a nuisance. [*Shannon v. Missouri Valley Limestone Co., supra*] is a strong case for the holding that it may be. (Emphasis added.) 474 S.W.2d at 189.

In *Jacobson v. Crown Zellerback Corp.*, 273 Or.15, 539 P.2d 641 (1975) the plaintiffs alleged damage to their house caused by vibrations from the operation of heavy logging trucks during wet weather on a county road running past their house. The trial court sustained a demurrer to the nuisance cause of action and the Supreme Court of Oregon affirmed, holding that "public policy dictates that no cause of action lies against an individual member of the public who uses the public way for travel in conformance with the rules laid down therefor."[2] 539 P.2d at 644.

In *Blumenthal v. City of Cheyenne*, 64 Wyo. 75, 186 P.2d 556 (1947) the plaintiffs sought to enjoin the enforcement of a municipal ordinance which established a through truck route on streets in a residential neighborhood. One of the theories advanced by the plaintiffs was that the truck traffic constituted a nuisance. The court rejected this theory on the ground that the truck operators were using the streets in a lawful and reasonable manner, that if the use of the streets abutting the plaintiffs' property were considered a nuisance, so would the use of all city streets, and in such a case all truck traffic would have to be prohibited in the city. The court further noted that "so far as ... the consequences complained of flow naturally

---

[2] The court did not, however, leave the plaintiffs without a remedy, but indicated that when "[t]he government conducts or permits an activity for public purposes upon its land that is sufficiently massive to amount to a taking of adjacent land, an action for inverse condemnation lies against the government." 539 P.2d at 634.

and normally from the conduct of the traffic under proper authority, in a reasonable manner and with due regard for the rights of others, one who conceives he has been injured can have no redress." 186 P.2d at 572, *quoting Cadwell v. Connecticut Ry. & Lighting Co.*, 84 Conn. 450, 80 A. 285 (1911).

The appellees cite both *Jacobson* and *Blumenthal* as support for their contention that a private party cannot be held responsible for a nuisance which arises from the use of a public road. We do not read these cases so broadly. The holdings of the courts in *Jacobson* and *Blumenthal* were both premised on a reasonable and lawful use of a public road. *Jacobson* held that no cause of action lies for a use of a public road which conforms "with the rules laid down therefor," and the language of *Blumenthal* quoted in the preceding paragraph implies that a cause of action would have existed had the plaintiffs therein shown an unreasonable or unlawful use of the streets involved. Therefore, insofar as the appellants herein have alleged, and offered uncontested evidence tending to prove an unreasonable and unlawful use of route 8/1 we read *Jacobson* and *Blumenthal* as supportive of their position that the haulage of coal along route 8/1 by the appellees has given rise to an actionable nuisance.

This Court treated exhaustively the subject of private nuisance in *Martin v. Williams*, 141 W. Va. 595, 93 S.E.2d 835 (1956). In *Martin* we said:

A nuisance is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. * * * A nuisance is anything which interferes with the rights of a citizen, either in person, property, the enjoyment of his property, or his comfort. * * * A condition is a nuisance when it clearly appears that enjoyment of property is materially lessened, and physical comfort of persons in their homes is materially interfered with thereby. * * * When the prosecution of a business, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well-being, comfort,

repose, and enjoyment of the ordinary normal individual residing therein, the carrying on of such business in such locality becomes a nuisance, and may be enjoined." 141 W. Va. at 610, 93 S.E.2d at 844.

Although traditionally private nuisance has been defined in West Virginia as that class of wrongs which arises from the unreasonable, negligent, or unlawful use of one's own property, *see, e.g., Pope v. Edward M. Rude Carrier Corp.*, 138 W. Va. 218, 75 S.E.2d 584 (1953), we see little rational basis in holding a party responsible for the creation of a nuisance when the acts which give rise to the nuisance occur on his private property, and yet relieve him of liability when those same unreasonable, negligent, or unlawful acts are conducted on public property.

It is a part of the great social compact to which every person is a party, and a fundamental and essential principle in every civilized community that every person yields a portion of his right of absolute dominion and use of his own property, in recognition of, and obedience to, the rights of others, so that others may also enjoy their property without unreasonable hurt or hinderance. Wood, *The Law of Nuisances* at 2-3 (3d ed. 1893). Just as the right to the free use of one's own property is subject to the implied obligation to use it so that it will not be unreasonably injurious to others, so the right to use public property also should be subject to the same implied obligation.

While it is true that the public has a legitimate right to the use and enjoyment of a public roadway, that right must be exercised in a reasonable manner and with due regard for the right of adjoining property owners to the use and enjoyment of their property. The law does not allow anyone, whatever his circumstances or conditions may be, to be driven from his house or compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. *Martin v. Williams, supra.* Accordingly we hold that a complaint which alleges an unreasonable, negligent, or unlawful use of public property which materially impairs the right of another to the enjoyment of his house and infringes upon

the well-being, comfort, repose, and enjoyment of the regular, natural person residing therein, states a cause of action for nuisance of which the courts of this State have cognizance.

## II.

The trial court dismissed the appellants' cause of action against the appellee National Mines Corporation because it apparently viewed the relationship between National and the coal haulers as one of employer–independent contractor, thus relieving National of any liability for the nuisance created by the truck traffic on route 8/1.[3] The appellants contend that this ruling is erroneous. They argue that a party cannot escape liability for a nuisance created by its operations by contracting with others to perform the objectionable segments of its operations.

We agree with the appellants that the defense of the independent contractor is of no avail to National in this case. The general rule that an employer is not liable for the torts of an independent contractor is subject to numerous exceptions. One of the exceptions is where the work contracted to be done is likely to create a nuisance. *Law v. Philips*, 136 W. Va. 761, 68 S.E.452 (1952); *Humphries v. Black Betsy Consol. Coal Co.*, 115 W. Va. 768, 178 S.E. 273 (1934). *See also Sanders v. Georgia-Pacific Corp.*; 159 W. Va. 621, 225 S.E.2d 218 (1976); *Carrico v. West Virginia Cent. & P. R'y Co.*, 39 W. Va. 86, 19 S.E. 571 (1894).

It is a well established principle of law that one who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve the creation of a public or private nuisance, is subject to liability for harm resulting to others from such nuisance. Restatement (Second) of Torts § 427 B (1965). *Accord, Weinmann v. DePalma*, 232 U.S. 571, 34 S. Ct. 370,

---

[3] Although the appellants alleged in their complaint that H & S Coal Company, B & F Coal Company, C & L Coal Company, Inc., and Economy Fuel Company, Inc. were contract haulers employed by National, and the trial court so found in its memorandum opinion, it is not clear from the record whether this was the actual relationship which existed between the parties, and is a matter which may be in need of further development on remand.

58 L. Ed. 733 (1913); *St. Paul Water Co. v. Ware*, 16 Wall (U.S.) 566, 21 L.Ed. 485 (1873); *Chicago v. Robbins*, 2 Black (U.S.) 418, 17 L.Ed. 298 (1863); *Green v. Berge*, 105 Cal. 52, 38 P. 539 (1894); *Fowler v. Saks*, 7 Mackey (D.C.) 570 (1890); *Atlanta & F.R. Co. v. Kimberly*, 87 Ga. 161, 13 S.E. 277 (1891); *Scammon v. Chicago*, 25 Ill. 424 (1861); *Wabash St. L. & P.R. Co. v. Farver*, 111 Ind. 195, 12 N.E. 296 (1887); *Shannon v. Missouri Valley Limestone Co., supra*; *Baumeister v. Markham*, 101 Ky. 122, 39 S.W. 844 (1897); *Davie v. Levy*, 39 La. Ann. 551, 2 So. 395 (1887); *Eaton v. European & N.A.R. Co.*, 59 Me. 520 (1871); *Weilbacker v. J. W. Putts Co.*, 123 Md. 249, 91 A. 343 (1914); *Pickett v. Waldford System*, 241 Mass. 569, 136 N.E. 64 (1922); *Rogers v. Parker*, 159 Mich. 278, 123 N.W. 1109 (1909); *Palmer v. Lincoln*, 5 Neb. 136 (1876); *Cuff v. Newark & N.Y.R. Co.*, 35 N.J.L. 17 (1870), *aff'd*, 35 N.J.L. 574 (1871); *Berg v. Parsons*, 156 N.Y. 109, 50 N.E. 957 (1898); *Clark v. Fry*, 8 Ohio St. 358 (1858).

It is also well established that all persons who join or participate in the creation or maintenance of a nuisance are liable jointly and severally for the wrong and injury done thereby. 58 Am. Jur. 2d *Nuisances* § 56 (1971). Only when the parties act entirely independently of one another, without any community of interest, concert of action, or common design, must those injured by the nuisance proceed on separate actions against the several wrongdoers for the proportion of damage caused by each separately. *See, e.g., Farley v. Crystal Coal & Coke Co.*, 85 W. Va. 595, 102 S.E. 265 (1920).

A party is not entitled to summary judgment unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances, *Wheeling Kitchen Equipment Co. v. R & R Sewing Center, Inc.*, 154 W. Va. 715, 179 S.E.2d 587 (1971); *Hanks v. Beckley Newspapers Corp.*, 153 W. Va. 834, 172 S.E.2d 816 (1970); *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W. Va. 160, 133 S.E.2d 770 (1963). In other words, on a motion for summary judgment, the facts of the case must be viewed in the light

most favorable to the nonmoving party. *Board of Education v. Van Buren & Firestone, Architects, Inc.,* ____ W. Va. ____, 267 S.E.2d 440 (1980).

In this case the allegations contained in the appellants' complaint and the evidence adduced at the hearing support the conclusion that the burden placed upon route 8/1 by the appellees' haulage of coal amounted to an unreasonable and unlawful use of the roadway, that such unreasonable and unlawful use of the roadway materially impaired the appellants' use and enjoyment of their house, and that National had reason to believe that haulage of coal along route 8/1 would result in the creation of the nuisance. Furthermore, it is obvious that National shared a community of interest with the other appellees in the haulage of its coal from its leasehold to its preparation facility. Consequently, it was error for the trial court to grant the appellees' motion for summary judgment.

### III.

The appellants' final contention is that the circuit court erred by denying their motion for a preliminary injunction.

The power to grant or refuse a temporary or preliminary injunction ordinarily rests in the sound discretion of the trial court according to the facts and circumstances of the particular case, and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion. *Mahoney v. Walter,* 157 W. Va. 882, 205 S.E.2d 692 (1974); *Stuart v. Lake Washington Realty Corporation,* 141 W. Va. 627, 92 S.E.2d 891 (1956).

In their complaint the appellants requested that the appellees be temporarily and permanently enjoined from hauling coal over route 8/1. However, at the hearing held to determine the propriety of preliminary injunctive relief, this request was abandoned, and the appellants asked that the appellees be required to abate the nuisance by placing and operating a water truck on the road to control

the dust, or to provide such other relief as may be deemed reasonable and just.

We reject the appellees' contention that the court has no authority to impose such a remedy because it would infringe upon the exclusive jurisdiction and duty of the Department of Highways to maintain public roads. While it is true that the Department of Highways has the responsibility to maintain public roads, *see W. Va. Code* § 17-2A-8 (1974 Replacement Vol.), that law does not prevent a court from requiring a party whose unreasonable, negligent or unlawful use of a public road creates a nuisance, to remedy the conditions giving rise to the nuisance. Moreover, it appears that the appellees have already assumed substantial responsibilities with regard to maintenance of route 8/1, in that they grade the road weekly to facilitate coal haulage.

At the hearing on their motion for a preliminary injunction the appellants presented ample testimony to support their contentions that the appellees' activities have created a serious dust nuisance which substantially interferes with the use and enjoyment of their house, causes them great hardship, and threatens their health and physical well-being. The appellees, on the other hand, presented no evidence to controvert the appellants' testimony.

In *McGregor v. Camden*, 47 W. Va. 193, 34 S.E. 936 (1899), this Court reversed an order of the Circuit Court of Ritchie County dissolving an injunction prohibiting the operation of an oil and gas well within 70 feet of the plaintiff's house. There, as here, the only evidence before the circuit court was that presented by the plaintiff tending to establish the existence of a nuisance. In reversing the trial court's order dissolving the injunctions, this Court held: "Plaintiff's proofs undoubtedly made a *prima facie* case of nuisance, which entitled them to have the injunction continued until a final hearing." 47 W. Va. at 199, 34 S.E. 936.

As in *McGregor*, the evidence presented by the appellants herein established a *prima facie* case of nuisance, which was uncontroverted by the appellees. Given the gravity of harm to which the appellants have been subjected by the appellees' coal hauling activities, and the absence of evidence of any hardship which abatement of the nuisance would impose upon the appellees, we find that the trial court abused its discretion by denying the apellants' motion for preliminary relief. From the evidence produced at the hearing we must conclude that the appellants are entitled to a preliminary mandatory injunction requiring the appellees to abate the dust nuisance caused by the haulage of coal along route 8/1 from National's leasehold to its preparation facility.

The appellants have indicated in their brief that there are a variety of possible solutions that could be employed to abate the dust without stopping truck traffic. These range from watering or otherwise treating the road, paving the road, imposing speed limits, requiring spacing intervals between trucks, and placing tarps or other coverings on the trucks before they leave the appellees' premises. This list is by no means exhaustive. Consideration should be given to these and any other forms of relief which are reasonable and proper. Accordingly we reverse the decision of the circuit court and direct that a preliminary injunction be granted requiring the immediate abatement of the dust nuisance caused by the appellees' activities. We leave for the trial court the determination of the appropriate method of abatement to be implemented by the appellees.

For the foregoing reasons the judgment order of the Circuit Court of Wyoming County is reversed and the case is remanded for the entry of an order consistent with this opinion.

*Reversed and remanded.*